*1048 OPINION.
Lansdon:
The result of the stipulation and of the waiver of one of its contentions by the taxpayer is that the issues remaining for the consideration of the Board may be summarized as follows: (1) The effect of the reissue of certain shares of treasury stock to employees, to be paid for out of dividends, and the collateral transactions connected therewith, on the invested capital and taxable income of the taxpayer; (2) the effect on invested capital of the action of the Commissioner in writing off additional depreciation on the taxpayer’s assets for the period prior to March 1, 1913; (3) the disallowance of unadjusted claims for refund of Federal taxes paid in prior years as elements of invested capital; and (4) whether there should be an additional deduction for bad debts ascertained to be worthless and charged off during the year in question. These issues will be discussed in the order of their statement.
The taxpayer contends in the matter of the reissued treasury stock, (1) that the transactions in question were of such a character that the status of such stock as treasury stock was not affected; (2) that the amounts credited to the personal accounts of the employees receiving the conditioned certificates should be regarded as *1049 additional compensation paid to such employees, and therefore deductible from income for the taxable year as ordinary and necessary expenses incurred in trade or business; (3) that invested capital should not be decreased by the amount of dividends credited to the personal accounts of such shareholders; and (4) that interest on debit balances of such accounts charged against the accounts should not be included in taxable income.
The taxpayer contends that the issues of the conditioned stock certificates evidencing transfer of treasury stock to its employees, by reason of the contingent character of the certificates, should not be regarded as capital transactions, and that the conditions imposed were of such a nature that the nominal reissue was a mere segregation of certain shares of its treasury stock without any actual change of ownership. If this claim is conceded, it follows that the amounts credited to the personal stock accounts of employees, although measured by dividends paid to all other stockholders of record, were not distributions of surplus but payments from earnings as additional compensation for services, as alleged in the petition.
The evidence and argument of the taxpayer in support of its first contention are not convincing. .We are of the opinion that the stock issued to employees, even though affected by certain conditions agreed to by the recipients, lost its character as treasury stock when reissued. The holders of the so-called contingent stock certificates were entitled to and did receive dividends as credits on their personal stock accounts, and at all times had the right to vote their stock in the meetings of the taxpayer’s shareholders. From the date of the certificates so issued such stock was outstanding. The amounts credited to the personal accounts representing these stock transactions were dividends, and their payment automatically reduced earned surplus ratably for that part of the taxable year subsequent to their credit to the personal accounts of the employees. This, however, had no effect on the total amount of statutory invested capital, since the amounts so credited, constructively at least, were paid in for shares. Having decided that the amounts of dividends credited to the personal stock accounts of the employees were, in fact, contributions of capital, it follows that the taxpayer may not deduct such credits from its income as ordinary and necessary expenses. The interest on the debit balances of such accounts was income to the taxpayer and should be included in its gross income for the year in question in the amount of $6,280.79.
It appears from our findings of fact that prior to March 1, 1913, the taxpayer acquired depreciable assets at a cost of $535,272.41, and wrote off depreciation in the amount of $89,272.86. The Commissioner held that such write-off was inadequate, and, by applying *1050 the straight-line method to various classes of assets, increased the taxpayer’s depreciation reserve as of March 1, 1913, to the amount of $188,134, thereby reducing its invested capital in the amount of $98,861.14.
The evidence adduced at the hearing is convincing that the reserves for depreciation set up by the taxpayer prior to March 1, 1913, reasonably reflect the actual facts of the physical deterioration of the tangible assets involved and should not now be disturbed. Appeal of Rub-No-More Co., 1 B. T. A. 228, and Appeal of Russell Milling Co., 1 B. T. A. 194.
It appears that since January 1,1914, and including the year 1919, the taxpayer has depreciated its capital assets on the straight-line method at rates as to which there is no controversy. For this period the only issue involved in the computation of depreciation, and the resulting effects on invested capital and taxable income, is whether the basis of such computation shall be the taxpayer’s book value of its assets as of March 1, 1913, or the reduced value resulting from the Commissioner’s deduction of alleged additional depreciation accumulated before that date. We have already decided this issue above. The taxpayer is, therefore, entitled to any increase in its invested capital and to adjustments of its gross income for the taxable year which may result from the application of reasonable rates of depreciation to the book value of its assets in the amount of $446,086.45 at March 1, 1913,-with due consideration for additions and abandonments.
The Board finds no merit in the taxpayer’s contention that the amount of claims for refunds of Federal taxes pending unadjusted before the Commissioner should be included in its invested capital for the taxable year. It may be that eventually such refunds will be paid, and if so it may then become necessary to readjust invested capital and tax liability for the years affected by such payments. Determinations of tax liability by the Commissioner are prima facie evidence that the amounts so determined are due, and until reversed by him or by competent tribunals must be accepted as final ascertain-ments as to the matters involved. To adopt the rule suggested by the taxpayer would establish an endless-chain system of readjustments of tax liability equally unsatisfactory to the Government and to taxpayers.
The taxpayer offered no evidence in support of its contention for a greater deduction on account of bad debts ascertained to be worthless and charged off during the taxable year sufficient to justify us in reversing or modifying the determination of the Commissioner on this point.
Order of redetermination will be entered on 15 days’ notice, under Rule 50.